## SUPREME COURT.

### THE PEOPLE agt. WILLIAM PAYNE.

A charge to the jury that the credibility of a witness was a matter resting with themselves, irrespective of any contradictions that might appear in his testimony on the trial, and his affidavit on a former occasion:
*Held,* erroneous.

### *New York General Term, July,* 1865.

*By the court,* SUTHERLAND, J.   There were certainly material discrepancies between the affidavit of Knapp before the police magistrate and his evidence on the trial; and the evidence tended to show that he had given a somewhat different account of the transaction in conversations with various persons.

The prisoner was convicted on the testimony of Knapp alone.

According to the return, the charge of the city judge was as follows: "You have heard the evidence of Knapp; you can judge by his manner, and by his statement before you, what degree of credit you will give to his testimony. It is a matter resting purely with yourselves, irrespective of any

---

negligence; it might properly be termed recklessness, or daring. To say that Ernst probably considered these demonstrations as urging him forward to get the ferry boat, would seem to be a forced theory; for men do not usually make such mistakes in their language and gestures, under the strong impulse of peril and danger, as to convey information to the mind the very reverse of that they intend. Besides, who ever heard before, that the prospective loss of a trip on a ferry boat (which would soon return), was sufficient cause to set the whole neighborhood into violent gesticulations of danger and loud calls of alarm. Yet, absurd as this may seem, it is precisely the theory which the jury had to adopt in exculpating Ernst from negligence or want of proper care, and to enable them to find a verdict for the plaintiff. The more natural and plausible theory, as it seems to us, would be to suppose that Ernst, having traveled that road often for a number of years, and probably having crossed the railroad safely in front of and near the engine many times, thought, as the ferry boat was waiting for him only, he would run the risk of crossing before the cars came along, although they were close upon him, as it is an inviting place to do so when the ferry boat is waiting.

People agt. Payne.

contradictions that may have taken place either at the police office or in his statements as to his visits to the house in Cherry street."

It appears to me that this was, in substance, instructing the jury that, in judging of the credit to be given to Knapp's testimony, they must disregard the discrepancies between the affidavit and his testimony, and his contradictory statements.

If the jury probably and naturally inferred that the charge meant this, there must be a new trial.

I cannot see what other construction can be put upon the charge. The word irrespective means, not regarding, or considering, regardless of.

The district attorney, I have no doubt, had a right to read the whole affidavit to the jury, but I think there must be a new trial, on the ground of the error in the charge of the judge.

LEONARD, J. I think the word "irrespective" was probably intended by the judge to mean "uncontrolled," and that the jury well enough understood that their discretion was not controlled by the contradictions of the witness, so that they were precluded from crediting him.

It may have been otherwise, and as Judge SUTHERLAND

The history of this case illustrates the successful results which often accrue to faithful and earnest (or Ernst) perseverance. The benefits, however, which arise from it, in a legal point of view, are of great importance. It settles the law that a traveler approaching a railroad track is bound to use his eyes and his ears, so far as there is opportunity; thus re establing the very sensible proposition laid down by Judge E. DARWIN SMITH, when this case was before the court on a former occasion (24 *How.* 97), and which was somewhat summarily disposed of afterwards, when the case was again before the court (32 *How.* 61), to wit: "In the judgment and opinion of a majority of men, common prudence forbids the attempt by any person, to cross the track of a railroad in constant use, without first taking the precaution to look both ways upon the track, and see and ascertain that a train is not approaching in either direction; and the omission to do so is, *per se,* gross negligence, in view of the danger to be avoided, and the fatal consequences involved in any accident resulting from such omission." REP.

has come to a different conclusion the question cannot be considered free from doubt. The prisioner is entitled to the benefit of the doubt. I concur that the verdict should be set aside and a new trial be had.

BARNARD, J., dissented.

————◦◦◦————

NOTE.—We had intended, in the last volume—35 *Howard's Practice Reports*, to have referred to the DIGEST contained in this work. From and including the 30th volume, the Digest in each volume, has comprised a full and complete digest of *all the cases* reported in the respective volumes of reports therein mentioned. The *caption* to the digest in each of the volumes of this work, from and including the 30th, is calculated to mislead, as it says: "Digest of the Points of Practice and Other Important questions, contained in the following reports." When, in fact, it should read (as it will hereafter): "Digest of all the Decisions contained in the following reports." REPORTER.